# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

ERATE PROGRAM, LLC,                          )
                                             )
      Plaintiff,                      )  Cause No.
                                             )
v.                                           )
                                             )
TRAVELERS CASUALTY AND SURETY                )  **JURY TRIAL DEMANDED**
COMPANY OF AMERICA,                          )
      **Serve: Missouri Division of Insurance** )
            **301 W. High Street, Room 530** )
            **Jefferson City, Missouri 65101** )
                                             )
      Defendant.                      )

## COMPLAINT

Plaintiff eRate Program, LLC ("Plaintiff"), for its Complaint against Travelers Casualty and Surety Company of America ("Travelers"), states as follows:

### Parties, Jurisdiction and Venue

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business in St. Louis, Missouri.

2.      Travelers is an insurance carrier, with its principal place of business in Hartford, Connecticut, doing business in the State of Missouri, and specifically within the Eastern District of Missouri.

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest and attorneys' fees, and there exists complete diversity of citizenship.

4.      Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391.

**Factual Background**

*The Policy*

5.      Travelers issued and delivered a policy of insurance, policy number 105494563 (the "Policy"), to Plaintiff.  A true and accurate copy of the Policy is attached hereto as *Exhibit A*.

6.      The Policy obligated Travelers to pay the "Loss" for any "Claim."  *See* Exhibit A, Miscellaneous Professional Liability Coverage, § I.A.

7.      The Policy defines "Loss" as "Defense Expenses and money which an Insured is legally obligated to pay as a result of a Claim, including settlements, judgments, compensatory damages, punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages, prejudgment and post-judgment interest, and legal fees and expenses awarded pursuant to a court order or judgment." *See* Exhibit A, Miscellaneous Professional Liability Coverage, § II.I.

8.      Under the Policy, "Defense Expenses" are "reasonable and necessary legal fees and expenses incurred by the Company or the Insured, with the Company's consent, in the investigation, defense, settlement and appeal of a Claim, including, but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such Claim[.]"  *See* Exhibit A, Liability Coverage Terms and Conditions, § II.F.

9.      The Policy defines "Claim" as:

1.      a written demand for monetary damages or non-monetary relief;

2.       a civil proceeding commenced by service of a complaint or similar pleading;

2

3.      a formal administrative or regulatory proceeding, other than a Disciplinary Proceeding, commenced by filing of a notice of charges, formal investigative order, service of summons, or similar document;

4.      an arbitration, mediation, or other alternative dispute resolution proceeding if the Insured is obligated to participate in such proceeding or if the Insured agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

5.      a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an Insured for a Wrongful Act."  *See* Exhibit A, Miscellaneous Professional Liability Coverage, § II.A.

10.     The Policy defines "Wrongful Act" as "any actual or alleged act, error, omission, misstatement, misleading statement, or breach of duty or neglect by or on behalf of, or any matter asserted against, an Insured in the rendering of or failure to render Professional Services." *See* Exhibit A, Miscellaneous Professional Liability Coverage, § II.M.

11.     Under the Policy, "Professional Services" are the "services performed for others set forth in ITEM 5 of the Declarations."  *See* Exhibit A, Miscellaneous Professional Liability Coverage, § II.K.

12.     Item 5 of the Declarations reads, "Professional Services: E-Rate Consultant, primarily for private schools."  *See* Exhibit A, Miscellaneous Professional Liability Coverage Declarations.

3

13.    The Policy provides a "Missouri Changes Endorsement," which provides, in relevant part:

> The following is added to section III. CONDITIONS F. INSURED'S DUTIES IN THE EVENT OF A CLAIM of the Liability Coverage Terms and Conditions: However, no Claim will be denied based upon the Insured's failure to provide notice within a specified time, unless this failure operates to prejudice the rights of the Company, as per Missouri regulation 20CSR100-1.020.

*See* Exhibit A, Missouri Changes Endorsement.

14.    Plaintiff timely paid all premiums owed on the Policy and otherwise performed all conditions precedent.

<u>*The Lawsuit*</u>

15.    On June 1, 2016, Plaintiff was served with the Summons and Complaint in the matter captioned *Futrell, et al. ex rel. United States of America v. eRate Program, LLC, et al.*, Case No. 4:14-CV-02063ERW (the "Lawsuit").

16.    The Lawsuit was filed under the federal False Claims Act ("FCA") statute by a former employee of Plaintiff and by a former contractor of Plaintiff as relators for the United States government pursuant to the FCA (the "FCA Plaintiffs").

17.    The FCA Plaintiffs alleged that Plaintiff, in performing its duties as a consultant for schools with respect to the E-Rate Program, made false and misleading statements to the United States government.

18.    The FCA Plaintiffs alleged that United States government suffered actual damages as a result of the alleged acts of Plaintiff.

19.    The FCA Plaintiffs sought to recover from Plaintiff the actual damages allegedly suffered by the United States.

20.     Plaintiff contacted its insurance broker, The Powers Insurance & Risk Management Group ("Powers Group") soon after receipt of the Lawsuit to advise it of the Lawsuit and obtain any coverage and defense afforded by any of Plaintiff's insurance policies.

21.     Plaintiff was told by the Powers Group that no policy provided any coverage for this claim.

22.     The Plaintiff thereafter engaged Blitz, Bardgett & Deutsch, L.C. ("BB&D") to defend Plaintiff in the Lawsuit.

23.     BB&D performed customary and reasonable defense activities in order to defend Plaintiff in the Lawsuit, including filing dispositive motions, answers and affirmative defenses, filing discovery requests and responding to the same, and retaining and working with an expert witness.

24.     The Court presiding over the Lawsuit ordered the parties in the Lawsuit to mediate the dispute in July 2018.

25.     In advance of the mediation, Plaintiff again contacted the Powers Group regarding insurance coverage.

26.     On or about July 3, 2018, the Powers Group resubmitted the claim to Travelers under the Policy.

*Travelers' Involvement*

27.     Prior to the mediation, Plaintiff requested Travelers to participate in the mediation scheduled for July 9, 2018.

28.     Travelers declined to participate in the mediation and stated that it was considering its coverage position.

29.     In a letter from Travelers dated July 6, 2018, Travelers stated "Rest assured that our claim professionals are ready to help.  When working with Travelers, you can always expect to be assisted promptly and treated with the utmost respect, integrity, professionalism and skill."

30.     At Travelers' request, Plaintiff's counsel thoroughly and extensively discussed the case with Travelers' representative, Mike Koester ("Koester") on July 9, 2018 and sent Travelers the only documents Koester requested – copies of the original complaint and all amended complaints.

31.     Plaintiff's counsel asked Koester if Travelers needed any additional information at this time and Koester responded that Travelers did not.

<u>*The Mediation and Settlement Opportunity*</u>

32.     Pursuant to the Court's order, the parties to the Lawsuit engaged in mediation on July 9, 2018, in which the mediator made a "Mediator's Proposal" to settle the case that was open until the end of the day on July 9, 2018.

33.     Under the Mediator's Proposal, if both sides accepted the proposal, the case would settle at the proposed figure of $160,000.00; however, if either side rejected it, there would be no deal and the rejecting party would not know whether the other party had accepted the proposal or not.

34.     On July 9, 2018, Plaintiff advised Travelers of the Mediator's Proposal and the rules associated with it and requested Travelers participate in settlement.

35.     Travelers declined to participate in the settlement and stated again that it was considering its coverage position.

36.     Plaintiff requested the mediator and the FCA Plaintiffs agree to keep the proposal open until July 11, 2018 which they agreed to do.

37.     On July 10, 2018, Travelers sent a letter to Plaintiff, again asking for the pleadings that counsel for Plaintiff had already provided to Travelers the previous day.

38.     On July 11, 2018, Plaintiff's counsel sent Travelers two emails asking to know Travelers' coverage position.

39.     Plaintiff's counsel requested that the Mediator and the FCA Plaintiffs agree to keep the Mediator's Proposal open for an additional week, until July 18, 2018, which they agreed to do.

40.     Travelers did not respond to Plaintiff's counsel's emails on July 11, 2018.

41.     Indeed, Travelers did not respond until Plaintiff's counsel followed up on July 13, 2018.  Travelers advised that it received Plaintiff's counsel's emails and that no additional information was needed in order for it determine its coverage position.

42.     On July 17, 2018, Travelers advised Plaintiff's counsel that Travelers was meeting internally on July 18, 2018 to discuss Plaintiff's coverage demand.

43.     Neither Plaintiff nor Plaintiff's counsel received any communication from Travelers on July 18, 2018.

44.     Plaintiff's counsel informed Travelers on the afternoon of July 18, 2018 that, because Travelers was not accepting coverage, Plaintiff would proceed as it deemed best regarding the Mediator's Proposal.

45.     On July 18, 2018, Plaintiff rejected the Mediator's Proposal.

46.     Plaintiff's counsel continued to update Travelers regarding the status of the Lawsuit, notably on July 24 and 26, 2018.

47.     On July 27, 2018, Travelers sent a letter to Plaintiff advising that it was denying coverage and rejecting tender of the defense.

48.     In the July 27, 2018 letter, the only proffered reason for Travelers' rejection of the defense was late notice of the claim from Plaintiff.

49.     Travelers did not state in the July 27, 2018 letter how or in what manner it was prejudiced by the alleged late notice of the claim.

50.     On August 7, 2018, Plaintiff sent Travelers another demand letter requesting that Travelers assume defense of the case.

51.     Plaintiff's August 7, 2018 demand letter did not supply Travelers with any information regarding the claim that Travelers did not already possess.

52.     On the morning of August 24, 2018, after extensive discussions between Plaintiff and the FCA Plaintiffs, Plaintiff reached a settlement under which Plaintiff agreed to pay the FCA Plaintiffs $160,000.00 in exchange for their dismissal of the Lawsuit, including particularly the FCA claims.

53.     On the afternoon of August 24, 2018, Koester telephoned Plaintiff's counsel and advised that Travelers had reversed its decision to deny coverage and would assume the defense of the case.

### *Travelers' Continued Refusal to Pay the Claim*

54.     Since August 24, 2018, Plaintiff has attempted to recover its Defense Expenses and the amount of the Settlement from Travelers.

55.     Despite Travelers' reversal of its coverage position, Travelers has failed and refused to reimburse Plaintiff for the total amount of these costs.

56.     Travelers' stated reason for denying Defense Expenses incurred before July 3, 2018 is late notice.

57.     Travelers has never stated how or in what manner it was prejudiced by the alleged late notice.

58.     Travelers has asserted two grounds for refusing to pay the settlement funds:  First, it asserts that the Policy only covers damages and not fines and penalties.

59.     The settlement does not provide that the settlement funds were fines or penalties but only that it was paid to obtain dismissal of the Lawsuit which was principally, if not exclusively, based on the FCA claims which sought actual damages.

60.     Travelers' second stated reason for refusing to pay the settlement funds is that the settlement was made only to obtain a dismissal of the FCA Plaintiffs' employment related claims and not the FCA claims.

61.     The settlement agreement specifically provides that the Settlement funds were paid in consideration of the FCA Plaintiffs' dismissal of the Lawsuit, which included the FCA claims.

62.     The Policy, as noted, provides that Defense Expenses include the fees and expenses of expert consultants and witnesses.

63.     Travelers has failed and refused to pay all of the fees of the expert witness retained by Plaintiffs in the Lawsuit which fees Plaintiff has paid out of its pocket.

64.     Travelers has never provided any reason for its decision not to pay all of the expert's fees and expenses.

65.     Travelers' refusal to pay all Defense Expenses is without reasonable cause or excuse.

66.     Plaintiff has paid or incurred liability for Defense Expenses totaling over $360,000.00 in the defense and settlement of the Lawsuit.

67.     Plaintiff has incurred additional attorneys' fees in pursuing this claim against Travelers.

## COUNT I – Declaratory Judgment

Plaintiff eRate Program, LLC, for Count I of its Complaint against Defendant Travelers Casualty and Surety Company of America, states:

68.     Plaintiff incorporates Paragraphs 1 through 67 as if fully set forth herein.

69.     The Policy is a valid, enforceable contract between Plaintiff and Travelers.

70.     Plaintiff complied with all obligations under the Policy.

71.     Plaintiff has made every effort to cooperate with Travelers' requests for information and documents.

72.     Travelers, in turn, refuses to cooperate with Plaintiff and refuses to pay the full amount of Plaintiff's claim for insurance coverage.

73.     As such, there exists a ripe and justiciable controversy between the parties.

74.     In particular, there is a ripe and justiciable controversy regarding the correct interpretation of the above quoted Missouri Endorsement which states that no claim will be denied on the bases of late notice unless the alleged late notice "operate[d] to prejudice the rights of" Travelers and yet Travelers has denied the claim in part on the basis of the late notice without explaining how it was prejudiced.

75.     Separately, there is a ripe and justiciable controversy regarding the correct interpretation of the above quoted policy provisions which states that Defense Expenses include the cost of settlement and yet Travelers has denied the claim in part on the basis that the settlement was for items not covered by the policy, even though at the time Plaintiff reached the

settlement, Travelers had wrongfully denied coverage, refused to participate in the defense of the Lawsuit and left its insured to fend for itself.

76.     Finally, there is a ripe and justiciable controversy regarding the correct interpretation of the above quoted policy provisions which states that Defense Expenses include the fees and expenses of expert witnesses and yet Travelers has denied payment of the expert's full fees without any explanation whatsoever.

WHEREFORE, Plaintiff eRate Program, LLC respectfully requests that this Court: (1) determine the rights and obligations of the parties under the Policy and enter a judgment construing the Policy, including applicable coverage provisions, exclusions and conditions thereunder in favor of Plaintiff; (2) declare that Travelers is obligated to provide insurance coverage to the full extent allowed under the Policy; (3) award Plaintiff its costs and expenses, including attorneys' fees; and (4) award any other relief this Court deems just and proper.

## COUNT II – Breach of Contract

Plaintiff eRate Program, LLC, for Count II of its Complaint against Defendant Travelers Casualty and Surety Company of America, states:

77.     Plaintiff incorporates Paragraphs 1 through 76 as if fully set forth herein.

78.     The Policy was a valid, enforceable contract requiring Travelers to pay the Loss for any Claim, including Defense Expenses.

79.     Travelers had, and continues to have, a duty under the Policy to indemnify Plaintiff for Losses that Plaintiff suffered as a result of the Lawsuit, including the Settlement amount and Plaintiff's Defense Expenses.

80.     Plaintiff has complied with all obligations under the Policy.

81.     Travelers has refused and continues to refuse to fully indemnify Plaintiff as required under the Policy and as stated above.

82.     Travelers' refusal is a breach of its obligations under the Policy.

83.     Travelers' breach has caused Plaintiff damages in an amount to be determined at trial, but not less than $75,000.00.

WHEREFORE, Plaintiff eRate Program, LLC respectfully requests that the Court enter judgment in its favor and against Travelers, in an amount to be determined at trial, but not less than $75,000.00, plus pre-judgment and post-judgment interest, court costs incurred herein, and for any other relief this Court deems just and proper.

## COUNT III – Vexatious Refusal to Pay (§ 375.420, RSMo)

Plaintiff eRate Program, LLC, for Count III of its Complaint against Defendant Travelers Casualty and Surety Company of America, states:

84.     Plaintiff incorporates Paragraphs 1 through 83 as if fully set forth herein.

85.     Travelers' refusal to pay Plaintiff's claim is vexatious and without reasonable cause or excuse.

86.     Specifically, Travelers refusal to pay Plaintiff's claim is vexatious in the following ways:

    a.  Travelers made duplicate requests for the same information from Plaintiff, after Plaintiff's counsel had already provided same to Travelers;

    b.  Travelers ignored repeated demands from Plaintiff to provide its coverage position;

    c.  Travelers unreasonably delayed in making its coverage determination while the mediator's settlement proposal was pending;

12

d.  Travelers denied Plaintiff's claim for coverage on July 26, 2018, then reversed its decision a month later on August 24, 2018, after the Mediator's Proposal closed;

e.  In denying Plaintiff's claim, Travelers failed to cite applicable endorsements to the Policy that modified the language of the Policy to Plaintiff's benefit;

f.  Based on information and belief, Travelers intentionally delayed making its coverage determination in hopes that it would force Plaintiff to settle the case at Plaintiff's own expense; and

g.  Based on information and belief, Travelers' plan was to intentionally delay making its coverage determination and force Plaintiff to settle the case at Plaintiff's own expense at which point Travelers would deny reimbursement of the Defense Expenses and forced Plaintiff to either forego recovery of these expenses in whole or part or be force to file litigation to recover them.

87.  Travelers' conduct violates § 375.420, RSMo, in that its conduct is without reasonable cause or excuse.

88.  Travelers' vexatious refusal to pay subjects it to liability in the amount of the claim (in excess of $75,000.00), statutory penalties under § 375.420, RSMo, attorneys' fees, and interest.

WHEREFORE, Plaintiff eRate Program, LLC respectfully requests that the Court enter judgment in its favor and against Travelers, in an amount to be determined at trial, but not less than $75,000.00, plus statutory penalties, attorneys' fees, pre-judgment and post-judgment interest, court costs incurred herein, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,


**BLITZ, BARDGETT & DEUTSCH, L.C.**

By:    /s/ *David H. Luce*
        David H. Luce, #36050MO
        Amy E. Oslica, #66879MO
        120 S. Central Ave., Ste. 1500
        St. Louis, MO  63105
        (314) 863-1500
        (314) 863-1877 (facsimile)
        dluce@bbdlc.com
        aoslica@bbdlc.com

*Attorneys for Plaintiff eRateProgram, LLC*